1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff Attilio Armeni hereby demands a trial by jury on all claims.

3

4    Dated:        February 15, 2012              PROSPER LAW GROUP, LLP

5

6

7                                          By:   _Vint Granberry_

8                                                Gordon F. Dickson
                                                 Deborah P. Gutierrez
9                                                Vincent C. Granberry
                                                 Attorneys for Plaintiff,
10                                               Attilio Armeni

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED COMPLAINT                                                    -26-

# EXHIBIT A

## Securitization Structure



# EXHIBIT B

Tina Sevillano
Trustee Sales at Recon Trust Co
Greater Los Angeles Area | Real Estate

| Current | • Trustee Sales at Recon Trust Co |
| Connections | 1 connection |

## Tina Sevillano's Experience

**Trustee Sales**
**Recon Trust Co**
Legal Services Industry
Currently holds this position

## Tina Sevillano's Contact Settings

**Interested in**

- career opportunities
- new ventures
- expertise requests
- reference requests
- consulting offers
- job inquiries
- business deals
- getting back in touch

## View Tina Sevillano's full profile to...

- See who you and Tina Sevillano know in common
- Get introduced to Tina Sevillano
- Contact Tina Sevillano directly

LinkedIn Corporation © 2011 |

# EXHIBIT C

**PROSPER LAW CORPORATION**
THE HOMEOWNERS LAW FIRM

March 10, 2011

**Via Facsimile (704) 386-6699 and Priority Tracking US Mail**

Bank of America Corporation
Customer Correspondence Unit
1000 West Temple Street
Los Angeles, CA 90012

Attorneys at Law
8320 Lincoln Blvd, Suite 164
Los Angeles, CA 90045
Telephone (800) 808-9798
Facsimile (800) 808-0428

Gordon F. Dickson, Esq.
E-Mail: gfdickson@prosperlawcorp.com
Direct Dial: (310) 893-6207

Re:     **QUALIFIED WRITTEN REQUEST**
        **Loan Number:** 132684135
        **Our Client:** Attilio Armeni
        **Property Address:** 2472 Leaflock Avenue, Westlake Village, CA, 91361

This letter is a "qualified written request" in compliance with and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).

To Whom It May Concern:

Please be advised this office has been retained by Attilio Armeni ("Mr. Armeni") in regards to the accounting and servicing of this loan and the need for understanding and clarification of various sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.  The subject property is located at 2472 Leaflock Avenue, Westlake Village, CA, 91361.

This letter concerns sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive, and fraudulent accounting tricks and practices that may have also negatively affected any credit rating, mortgage account and/or the debt or payments that my clients may be legally obligated to.

Please provide the following information:

1. A complete life of loan transactional history;
2. The Transaction Codes for the software platform of the Servicer;
3. The Code definitions in plain English;
4. The Key Loan Transaction history, bankruptcy work sheet (if any), or any summary of all of the accounts in an XL spreadsheet format;
5. The MERS Milestone Reports and the Edgar website address for the Pooling and Servicing Agreement, Prospectus and Prospectus Supplement;
6. The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note;
7. Copies of all collection notes and communications files;
8. An itemized statement of the amount needed to fully reinstate the loan;
9. All communications with any non-lawyer third-party providers; and
10. All Form P-309 screen shots of all system accounts (principal, interest, escrow, late charges, legal fees, property inspection fees, property preservation fees, broker price opinion fees, statutory expense fees, miscellaneous fees, corporate advance fees, trustee suspense accounts, debtor suspense accounts) associated with the loan.

March 10, 2011
<<BORROWER>>
Page 2 of 3

Under RESPA, this information must be provided and cannot be claimed as "confidential," "proprietary," or otherwise private. Failure to disclose the requested information will be considered failure to comply with this Qualified Written Request and thus a violation of 15 U.S.C. section 1601.

I also hereby demand that a chain of transfer from Bank of America to wherever the security currently is be promptly sent to my office. Absent the actual evidence of the security, Mr. Armeni has no choice but to dispute the validity of Bank of America's lawful ownership, funding, entitlement right, and the current debt Bank of America claims Mr. Armeni owes. By debt I am referring to the principal balance Bank of America claims Mr. Armeni owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by Bank of America or any trust or entity Bank of America may service or sub-service for.

To independently validate this debt, my office needs to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until responses are provided to each of the requests.

I also request that Bank of America conduct Bank of America's own investigation and audit of this account since its inception to validate the debt Bank of America currently claims Mr. Armeni owes. I would like Bank of America to validate the debt so that it is accurate.

Please be aware that potential abuses by Bank of America or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

Increased the amounts of monthly payments;
Increased the principal balance Mr. Armeni owes;
Increased the escrow payments;
Increased the amounts applied and attributed toward interest on this account;
Decreased the proper amounts applied and attributed toward the principal on this account; and/or;
Assessed, charged and/or collected fees, expenses and miscellaneous charges Mr. Armeni is not legally obligated to pay under this mortgage, note and/or deed of trust.

Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth in Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer the questions provided in this letter within sixty (60) days of its receipt.

Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter.

### Default Provisions under this QUALIFIED WRITTEN REQUEST

Bank of America or any agents, transfers, or assigns' omissions of, or agreement by silence to this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to, including but not limited by, any violations of law and/or immediate termination and/or removal of any and all right, title and interest (liens) in Mr. Armeni's, or any property or collateral, connected to Mr. Armeni's or loan number 132684135, and waives any and all immunities and/or defenses to claims and/or violations agreed to in this RESPA REQUEST, including but not limited to:

1.    Mr. Armeni's right to, by Bank of America's breach of fiduciary responsibility, fraud, and/or misrepresentation, revoke and rescind any and all power of attorney or appointment Bank of America may have or may have had in connection with loan number 132684135, and any property and/or real estate connected with loan number 132684135;

March 10, 2011
<<BORROWER>>
Page 3 of 3

2.      Mr. Armeni's right to have any certificated or uncertificated security re-registered inMr. Armeni's, and only Mr. Armeni's name;

3.      Mr. Armeni's right of collection via Bank of America's liability insurance and/or bond;

4.      Mr. Armeni's entitlement in filing and executing any instruments, as power of attorney for and by Bank of America ,including but not limited to a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Bank of America is located;

5.      Bank of America's right to damages because of Bank of America's wrongful registration and breach of intermediary responsibility with regard to Mr. Armeni's asset, by way of Bank of America issuing to Mr. Armeni a certified check for the original value of Mr. Armeni's monetary instrument;

6.      Mr. Armeni's right to have loan number 132684135 completely set off because of Bank of America's wrongful registration and breach of intermediary responsibility with regard to Mr. Armeni's monetary instrument/asset by Bank of America's sending confirmation of set off of wrongful liability of Mr. Armeni and issuing a certified check for the difference between the original value of Mr. Armeni's monetary instrument/asset and what Mr. Armeni mistakenly sent to Bank of America as a payment for such wrongful liability.

        Bank of America or any of Bank of America's transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws - signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury, while offering direct testimony with the official capacity as appointed agent for Bank of America in accordance with Bank of America's Articles of Incorporation, by-laws duly signed by a current and duly sworn under oath director(s) of such corporation/ Holding Corporation/ National Association.

        Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days.  When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Bank of America's judgment and consent/agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

        Power of Attorney: When Bank of America fails by not rebutting to any part of this RESPA REQUEST, Bank of America agrees with the granting unto Mr. Armeni unlimited Power of Attorney and any and all full authorization in signing and endorsing Bank of America's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement.  Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement.  Consent and agreement with this Power of Attorney by Bank of America waives any and all claims and/or defenses of Bank of America, and remains in effect until the satisfaction of all obligations by Bank of America have been satisfied.

        If you have any questions, please do not hesitate to contact my office.


        Sincerely,

        Gordon F. Dickson, Esq.
        *Managing Attorney*

# EXHIBIT D



**Bank of America**

**Home Loans**

*Mail Stop, CA6-919-01-41*
*P.O. Box 5170*
*Simi Valley, CA 93062-5170*

**Notice Date:**   March 15, 2011

**Account No.:**   132684135

Proper Law Corporation
8320 Lincoln Blvd. Ste 164
Los Angeles, CA 90045

**Property Address:**
2472 Leaflock Avenue
Westlake Village, CA 91361

---

**ABOUT YOUR HOME LOAN**

Please be advised, per your request we have included a copy of the borrowers note and faxed a payment history of the mortgage account.

Please keep in mind that we will not be able to provide the remaining information requested as that is confidential internal information.

---

**THANK YOU FOR YOUR BUSINESS**

If you have any questions, please call us at (800) 669-6607.  We appreciate the opportunity to serve your home loan needs.

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

Please write your account number on all correspondence.        CSSTFI  12407  07/26/2010

Prepared by: ANIK NORTIKYAN

LOAN #: 132684135

# ADJUSTABLE RATE NOTE
### (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

APRIL 23, 2006                    WESTLAKE VILLAGE                    CALIFORNIA
[Date]                            [City]                             [State]

2472 LEAFLOCK AVENUE, WESTLAKE VILLAGE, CA 91361
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 630,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of 7.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of 1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of JUNE, 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

• **PayOption ARM Note - MTA Index**
1E306-XX (12/05)(d)                    Page 1 of 5

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL

BY

*23991*

*13268413500001E306*

LOAN #: 132684135

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D)   Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 575/1000                percentage point(s)     3.575 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

### 3.   PAYMENTS

#### (A)   Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the first              day of each month beginning on JUNE 01, 2006          . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    MAY 01, 2036              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

#### (B)   Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $2,174.26        , unless adjusted under Section 3(F).

#### (C)   Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first              day of JUNE, 2007        , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

#### (D)   Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than    7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

#### (E)   Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date

LOAN #: 132684135

in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

(F)  **Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN             percent
(   115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G)  **Required Full Payment**
On the tenth        Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H)  **Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D), I may be given the following Payment Options:
     (i)   **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
     (ii)  **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
     (iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

4.  **NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.  **BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.  **LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
BY

LOAN #: 132684135

that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000  % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

(B)   Default

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

(C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

● PayOption ARM Note - MTA Index
1E306-XX (12/05)

Page 4 of 5

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL.
BY

# EXHIBIT E

Recording Requested by: DPS

**Landsafe Default Inc.**
RECORDING REQUESTED BY:
WHEN RECORDED MAIL TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Attn: Ana Razo
TS No. 10-0142971
Title Order No. 10-8-513132

20101101-00168370-0 1/4
Ventura County Clerk and Recorder
MARK A. LUNN
11/01/2010 08:00:00 AM
462219 $27.00 RE

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded ( which date of recordation appears on this notice).

This amount is $25,132.02, as of 10/28/2010 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations ( such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the end of the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

TS No. 10-0142971

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HARBORVIEW MORTGAGE LOAN TRUST 2006-5
C/O BAC Home Loans Servicing, LP
400 COUNTRYWIDE WAY  SV-35
SIMI VALLEY, CA  93065
FORECLOSURE DEPARTMENT (800) 669-6650

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure. Remember,

## YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN THAT: RECONTRUST COMPANY, N.A., is acting as an agent for the Beneficiary under a Deed of Trust dated 04/23/2006, executed by ATTILIO ARMENI, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as beneficiary recorded 05/05/2006, as Instrument No. 20060505-0096610 (or Book , Page ) of Official Records in the Office of the County Recorder of Ventura County, California.

Said obligation including ONE NOTE FOR THE ORIGINAL sum of $ 630,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of :  FAILURE TO PAY THE INSTALLMENT OF PRINCIPAL AND INTEREST  WHICH BECAME DUE ON 03/01/2010  AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, TOGETHER WITH ALL LATE CHARGES; PLUS ADVANCES MADE AND COSTS INCURRED BY THE BENEFICIARY INCLUDING FORECLOSURE FEES AND COSTS AND/OR ATTORNEYS' FEES.  IN ADDITION,  THE ENTIRE PRINCIPAL AMOUNT WILL BECOME DUE ON  05/01/2036 AS A RESULT OF THE MATURITY OF THE OBLIGATION ON THAT DATE.

TS No. 10-0142971

That by reason thereof, the present beneficiary under such deed of trust has executed and delivered to RECONTRUST COMPANY, N.A. such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

If required by the provisions of Section 2923.5 of the California Civil Code, the declaration from the mortgagee, beneficiary or authorized agent is attached to the Notice of Default duly recorded with the appropriate County Recorder's office.

Dated: October 28, 2010

RECONTRUST COMPANY, N.A., as agent for the Beneficiary

By _____

JONATHAN JACKSON

*Form dotnodfax (12/09)*



**Bank of America**
**Home Loans**

**Notice Date:** October 14, 2010

| 10-0142971 |
| --- |

Attilio Armeni
3116 N Summit Pointe Dr
Topanga, CA 90290

**Property Address:**
2472 Leaflock Avenue
Westlake Village, CA 91361

## CALIFORNIA DECLARATION

I, _Marc A. Person_, Mortgage Servicing Specialist II of BAC Home Loans Servicing, LP, declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

Bank of America Home Loans

☐ has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure,

☒ tried with due diligence to contact the borrower in accordance with California Civil Code Section 2923.5, or

☐ verified that the borrower has surrendered the property.

☐ has evidence and reasonably believes that the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and to avoid their contractual obligations to beneficiaries.

☐ has confirmed that the borrower(s) filed for bankruptcy and the proceedings have not been finalized to wit, there is no order on the court's docket closing or dismissing the bankruptcy case.

☐ The provisions of California Civil Code §2923.5 do not apply because State Reason.

_10-14-10 Fort Worth, TX_
Date and Place

_Marc A. Person_
Name of Signor

CA-DECLARATIONS 8638/9508 8/27/2008

# EXHIBIT F

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

Recording Requested By:
G. NORTON

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ANIK NORTIKYAN

6051 0 1732

20060505-0096610
Pages: 20    Fees: $93.00
05/05/2005 08:00:00 AM
T20050035479 EA
Ventura County Recorder
Philip J. Schmit

[Space Above This Line For Recording Data]

4-6505-MW                              00013268413504006
[Escrow/Closing #]                     [Doc ID #]

# DEED OF TRUST

MIN 1000157-0006707230-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 23, 2006    , together with all Riders to this document.
(B) "Borrower" is
ATTILIO ARMENI, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP -6A(CA) (0207)   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291    Form 3005  1/01
CONV/VA





DOC ID #: 00013268413504006

Borrower's address is

3116 N. SUMMIT POINTE DRIVE, TOPANGA, CA 90290

Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is

AMERICA'S WHOLESALE LENDER

Lender is a CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

**(D) "Trustee"** is

CTC REAL ESTATE SERVICE

400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated  APRIL 23, 2006      . The Note states that Borrower owes Lender

SIX HUNDRED THIRTY THOUSAND and 00/100

Dollars (U.S. $ 630,000.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  MAY 01, 2036      .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | LEGAL DESCRIPTION |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

DOC ID #: 00013268413504006

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of VENTURA :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 696-0-114-295                          which currently has the address of
2472 LEAFLOCK AVENUE, WESTLAKE VILLAGE                          ,
[Street/City]
California    91361    ("Property Address"):
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

DOC ID #: 00013268413504006

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.