**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
Vincent C. Granberry, Esq., SBN 276483
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone: (310) 893-6200
Facsimile: (310) 988-2930
Email: deborah@prosperlaw.com

Attorneys for Plaintiff,
Attilio Armeni, Trustee of The
Armeni Family Trust Dated July 23, 1993,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATTILIO ARMENI, TRUSTEE OF THE ARMENI FAMILY TRUST DATED JULY 23, 1993, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICA'S WHOLESALE LENDER; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HARBORVIEW MORTGAGE LOAN TRUST 2006-5; BANK OF AMERICA, AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP; and Does 1 – 10, inclusive, <br><br> Defendants. | **Case No. SACV11-01317-DOC (SHx)** <br><br> **Hon. David O' Carter** <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS AMERICA'S WHOLESALE LENDER; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HARBORVIEW MORTGAGE LOAN TRUST 2006-5; AND BANK OF AMERICA, AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP'S MOTION TO DISMISS THIRD AMENDED COMPLAINT** <br><br> **Date: April 16, 2012** <br> **Time: 8:30 a.m.** <br> **Ctrm.: 9D** |

1

1         Plaintiff Attilio Armeni, as Trustee of The Armeni Family Trust Dated July 23,

2   1993 ("Plaintiff") by and through his attorneys of record hereby opposes America's

3   Wholesale Lender; Deutsche Bank National Trust Company, As Trustee For The

4   Harborview Mortgage Loan Trust 2006-5 and Bank of America, As Successor By

5   Merger to BAC Home Loans Servicing, LP's Motion To Dismiss Third Amended

6   Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This opposition is

7   based on all the papers on file with the Court, the arguments set forth, and any

8   arguments made by Plaintiffs' counsel at the hearing currently scheduled for this matter.

9

10   Dated:      March 26, 2012          PROSPER LAW GROUP, LLP

11

12

13              By:   /s/ Deborah P. Gutierrez

14                  Gordon F. Dickson
                    Deborah P. Gutierrez

15                  Vincent C. Granberry
                    Attorneys for Plaintiff,

16                  Attilio Armeni, as Trustee of
                    The Armeni Family Trust

17                  Dated July 23, 1993

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS AMERICA'S WHOLESALE LENDER; DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HARBORVIEW MORTGAGE LOAN TRUST 2006-5; AND BANK OF AMERICA, AS SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................... 1

III.    STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL
        PROCEDURE 12(b)(6) ........................................................................ 4

IV.     JUDICIAL NOTICE IS PROCEDURALLY CORRECT AS TO THE
        EXISTENCE OF DOCUMENTS, BUT NOT AS TO THEIR CONTENTS 5

V.      PLAINTIFF IS NOT REQUIRED TO TENDER ......................................... 7

VI.     PLAINTIFF'S CHALLENGE TO THE ENFORCEMENT OF THE DEED
        OF TRUST IS PROPER ....................................................................... 8

        A.     The Foreclosure Is Invalid as Defendants Do Not Own the Note ........ 8

        B.     Plaintiff's Challenge to Deutsche's Authority is Proper and *Gomes* is
               Inapplicable ........................................................................... 9

VII.    PLAINTIFF SUFFICIENTLY ALLEGES THE ASSIGNMENT IS
        INVALID ........................................................................................ 10

VIII.   PLAINTIFF HAS STANDING TO ASSERT DEFENDANTS ARE NOT
        HIS CREDITORS ............................................................................. 15

        A.     Plaintiff Meets the Article III Requirements ..................................... 16

        B.     Plaintiff Meets the Prudential Considerations ................................... 17

IX.     PLAINTIFF HAS SUFFICENTLY ALLEGED EACH CLAIM IN HIS
        TAC ............................................................................................... 18

        A.     Plaintiff has Alleged an Actual Controversy Among the Parties
               Sufficient to Maintain a Cause of Action for Declaratory Relief ...... 18

1      B.     Deutsche is a "Debt Collector" under the Fair Debt Collection

2           Practices Act ("FDCPA")............................................................... 19

3      C.     Plaintiff has Sufficiently Alleged a Claim Under California Business

4           and Professions Code Section 17200 .................................................. 20

5      D.     Plaintiff has Sufficiently Alleged a Claim for Breach of Contract

6           Against Defendants........................................................................ 22

7      E.     Plaintiff has Sufficiently Alleged a Claim for Breach of the Implied

8           Covenant of Good Faith and Fair Dealing .......................................... 22

9  X.     CONCLUSION................................................................................ 23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aetna Life Ins. Co. of Harford, Conn. v. Haworth,*
    300 U.S. 227(1937) ..................................................................................20, 23

*Baker v. Carr,*
    369 U.S. 186, 204, 82, S.Ct. 691 (1962). ...............................................22

*Bank of the West v. Sup. Ct.,*
    2 Cal.4th 1254 (1992)...............................................................................26

*Berryman v. Merit Property Management, Inc.,*
    152 Cal.App. 4th 1544 (2007)..................................................................25

Born v. Koop
    (1962) 200 Cal.App.2d 519 .....................................................................19

*Cel-Tech Communications & Cel-Communications, Inc. v. Los Angeles Cellular
Telephone Co.,*
    20 Cal.4th 163 (1999)...............................................................................25

*Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993)........................10

*Chern v. Bank of America,*
    15 Cal.3d 866 (1976).................................................................................26

Cisco v. Van Lew
    (1943) 60 Cal.App.2d 575 .......................................................................19

*Cockerell v. Title Ins. & Trust Co.,*
    42 Cal. 2d 284 (1954)...............................................................................14

*Castro v. Bank of America, N.A.,*
    Case No. CV-11-6142-GHK (AJWx), *3 (C.D. Cal. Dec. 9, 2011).....................16, 24

*Comunale v. Traders & General Ins. Co.,*
    50 Cal. 2d 654 (1958)...............................................................................27

*Conley v. Gibson,*
    355 U.S. 41, 45-46 (1957) ........................................................................10

*Fisher v. Salmon,*
   1 Cal. 413 (1851) ..................................................................................16

*Fontenot v. Wells Fargo Bank, N.A.,*
   198 Cal. App. 4th 256 (2011) ..............................................................19

*Foulkrod v. Wells Fargo Financial California Inc.,*
   No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) .......................12

*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997) (citation omitted) ....................................9

*Gladstone Realtors v. Village of Bellwood,*
   441 U.S. 91 (1979). .......................................................................20, 21

*Gomes v. Countrywide,*
   192 Cal. App. 4th 1149 (2011) ........................................................14, 15

*Hartford Fire Ins. Co. v. California,*
   509 U.S. 764 (1993) .............................................................................10

*In re Foreclosure Cases,*
   521 F. Supp. 2d 650 (S.D. Oh. 2007) ..................................................16

*In re Tobacco II,*
   46 Cal.4th 298 (2009) ...........................................................................25

*In re Vargas,*
   396 B.R. 511 (Bankr. C.D. Cal. 2008) .................................................16

*In Re: Walker,*
   No. 10-21656-E-11, 2010 Bankr. LEXIS 3781 (E.D. Cal. May 20, 2010) .................16

*Johnson v. HSBC Bank USA, N.A., et al.,*
   Case No. 3:11-cv-2091-JM-WVG, *5 (S.D. Cal. March 19, 2012) ..............16, 22

*Joslin v. H.A.S. Ins. Brokerage,*
   184 Cal. App. 3d 369 (1986) ................................................................10

*Krieger v. Nick Alexander Imports, Inc.,*
   234 Cal. App. 3d 205(1991) .................................................................27

*Kunert v. Mission Financial Services Corp.,*

1 Cal.Rptr.3d 589 (2003)..................................................................26

*Landmark Nat'l Bank v. Kesler,*

289 Kan. 528, 216 P.3d 158 (Kan. 2009)....................................16

*LaSalle Bank v. Lamy,*

12 Misc. 3d 1191A, 824 NY.S.2d 769 (N.Y. Sup. Ct. 2006))..............16

*Lona v. Citibank, N.A.,*

2011 WL 6391584 (Cal. App. 6 Dist. Dec. 21, 2011) ...................12, 13

*Love v. Wolf,*

226 Cal. App. 2d 378, 403 (1964)..........................................11

*Lujan v. Defenders of Wildlife,*

504 U.S. 555, 560, 112 S. Ct. 2130 (1992)............................20, 21

*Mangini v. R. J. Reynolds Tobacco Co.,*

7 Cal. 4th 1057, 1062 (1994)..............................................11

*Maryland Cas. Co. v. Pacific Coal & Oil Co.,*

312 U.S. 270 (1941) ........................................................23

*MERS v. Nebraska,*

270 Neb. 529 (2005).........................................................17

*Moeller v. Lien,*

25 Cal. App. 4th 822 (1994)............................................13, 14

*Munson v. Del Taco, Inc.*

46 Cal. App. 4th 661 (2009)................................................25

*Olszewski v. Scripps Health,*

30 C4th 798 (2003).........................................................25

*Onofrio v. Rice,*

55 Cal. App. 4th 413 (1997)............................................12, 13

*Poseidon Development, Inc. v. Woodland Lane Estates, LLC,*

152 Cal. App. 4th 1106 (2007)..........................................11, 12

*Progressive West Ins. Co. v. Yolo County Superior Court*

125 Cal. App. 4th 263 (2005)...............................................25

TABLE OF CONTENTS

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987) ...................................................................... 10

*Sacchi v. Mortgage Electronic Registration Systems, Inc.,*
    No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal. June 24, 2011) ..................... 14

*Santens v. Los Angeles Fin.,*
    91 Cal.App.2d 197 (1949) ...................................................................... 13, 14

*Schafer v. CitiMortgage, Inc.,*
    No. CV 11-03919 ODW, 2011 WL 2437267 (C.D. Cal. June 15, 2011) ................... 14

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) .......................................................................... 6, 10

*Seattle Audubon Soc'y v. Moseley,*
    80 F.3d 1401 (9th Cir. 1996) ...................................................................... 23

*Stockton v. Newman,*
    148 Cal. App. 2d 558 (1957) ...................................................................... 12

*StorMedia, Inc. v. Superior Court,*
    20 Cal.4th 449, fn. 9 (1999) ...................................................................... 11

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1984) ...................................................................... 21

*Vogan v. Wells Fargo et al.,*
    No. 11-cv-2098-JAM-KJN, 2011 WL 5826016 (N.D. Cal. Nov. 11, 2011) .............. 15

*Wise v. Wells Fargo Bank, N.A., et al.,*
    Case No. CV 11-8586 CBM (PJWx) *4-5 (C.D. Cal. March 23, 2012) .............. 16, 22

**Statutes**
15 U.S.C. § 1692a(6) ...................................................................... 23
15 U.S.C. 1692A(6)(F)(iii) ...................................................................... 23
28 U.S.C. Section 2201(a) ...................................................................... 21
Cal. Penal Code section 532(f)(a)(4) ...................................................................... 24
California Business and Professions Code Section 17200 ...................................................................... 24, 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

California Civil Code § 2924 ................................................................13

California Civil Code § 2924(a)(1) .........................................................14

**Rules**
Federal Rule 12(b)(6) ...........................................................................8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants' Motion to Dismiss (hereinafter "Motion") Plaintiff Atillio Armeni's (hereinafter "Mr. Armeni" or "Plaintiff") Third Amended Complaint ("TAC") attempts to misstate Plaintiff's allegations in an effort to dismiss his lawsuit and avoid discovery surrounding serious defects in the chain of title surrounding Plaintiff's Property. Through the instant lawsuit, Mr. Armeni has plausibly demonstrated that Defendants America's Wholesale Lender  ("**America's Wholesale**"); Deutsche Bank National Trust Company, as Trustee of the Harborview Mortgage Loan Trust 2006-5 ("**Deutsche**"); and Bank of America as successor by merger to BAC Home Loans Servicing, LP ("**BAC Home Loans**") (hereinafter the "Defendants"), are not his true creditors and as such have no legal, equitable, or pecuniary right in this debt obligation secured by real property located at 2472 Leaflock Avenue, Westlake Village, California 91361 (hereinafter "the Property").  The Court's jurisdiction over this matter is pursuant to federal question jurisdiction.

Defendants' Motion fails, *not only because the Third Amended Complaint sets forth sufficient allegations, both legal and factual, to establish a statement of the claims for which relief can be granted*.  As the Court has previously recognized, Plaintiff has sufficiently pleaded both plausible factual allegations, as well as legal claims, to enable his Third Amended Complaint to move forward.  This is not the phase in litigation to resolve the contest between the facts or on the merits of the case.  Again, in reviewing the sufficiency of the claims asserted, the issue *is not* whether Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### II.   STATEMENT OF FACTS

A majority of Plaintiff's claims are based on his allegations that Defendants have no interest in his Loan.  Here, Plaintiff has advanced one primary theory as to why none

1  of the Defendants hold an interest in his Loan: because the Assignment purporting to

2  grant Deutsche the beneficial interest in his Loan is invalid.  As additional underlying

3  factual support, Plaintiff alleges Defendants failed to properly securitize his Loan and

4  that his mortgage Loan was never actually transferred or assigned to the Harborview

5  Mortgage Loan Trust 2006-5.

6          To begin, on April 23, 2006, Plaintiff executed a promissory note ("Note") in

7  favor of America's Wholesale Lender in the amount of $630,000.00 secured by a deed

8  of trust ("Deed of Trust" or "Mortgage") for the finance of real property located at 2472

9  Leaflock Avenue, Westlake Village, California 91361 in favor of the originating lender,

10 America's Wholesale.  The Property was the security for this debt obligation.

11         Defendants claim that the mortgage Loan was subsequently, transferred to

12 Deutsche, as Trustee for the Harborview Mortgage Loan Trust 2006-5.  However, this

13 claim is belied by the same foreclosure documents on which Defendants rely and an

14 analysis of the Pooling and Servicing Agreement (or "PSA"), the document governing

15 the creation and administration of the Trust.  Review of these document reveals that

16 Plaintiff's Note and Mortgage were not, and are not, part of the Harborview Trust res.

17 (TAC ¶¶ 1, 20-25.)

18         In order to cover up this fatal defect, on November 5, 2010, Defendants set out on

19 a course to cover up the defective transfer into the Trust by executing and recording an

20 invalid Assignment of Deed of Trust ("Assignment") with the Ventura County

21 Recorder's Office.  The Assignment claims that "for value received," MERS "granted,

22 assigned, and conveyed to Deutsche," as Trustee of the Harborview Trust, all the

23 beneficial interest in Plaintiff's Deed of Trust together with the Note.  Notably, the

24 Assignment was executed October 28, 2010 by "T. Sevillano" a purported "Assistant

25 Secretary" for MERS.  However, Plaintiff specifically alleges "T. Sevillano" executed

26 the purported Substitution and Assignment while holding herself out to be an "Assistant

27 Secretary" for MERS with no personal knowledge or corporate authority to do so.

28

1    (TAC ¶ 28, Ex. B.)  Additionally, Plaintiff attached a true and correct copy of "T.

2    Sevillano's" LinkedIn page as Exhibit "B" to his TAC.  LinkedIn is a social networking

3    website geared towards companies and industry professionals looking to make new

4    business contacts or keep in touch with previous co-workers, affiliates, and clients.

5    Within LinkedIn, Members can create customizable profiles that detail employment

6    history, business accomplishments, and other professional accolades.[1]  "T. Sevillano's"

7    LinkedIn profile reveals her full name as "Tina Sevillano" and demonstrates she works

8    in "Trustee Sales" at "Recon Trust Co." and not as "Vice President" for MERS.

9    Moreover, her profile indicates she currently holds the "Trustee Sales" position with

10   "Recon Trust Co."  These facts make it plausible that "T. Sevillano" is indeed a "robo-

11   signer" acting without any corporate authority to sign the Substitution and Assignment

12   on behalf of MERS.[2]  As this Court correctly recognized in its order granting in part and

13   denying in part Defendants' previous Motion to Dismiss, it is plausible that the

14   Assignment is invalid and failed to transfer the beneficial interest in Plaintiff's Note and

15   Deed of Trust to Deutsche or Substitute ReconTrust Company as Trustee under the

16   Deed of Trust.  Certainly, these allegations, accepted as true, coupled with the

---

[1] http://www.hudsonhorizons.com/Our-Company/Internet-Glossary/LinkedIn.htm

[2] Plaintiff's information and belief is consistent with the Washington State Attorney General's recent lawsuit against Recontrust and a recent deposition of "Renee Freidman," a current employee of Recontrust. of "Renee Freidman," a current employee of Recontrust. *See* **Exhibit "A,"** attached hereto as a true and correct copy of Renee Freidman's September 14, 2011 deposition. Although deposed in another case, Ms. Friedman's testimony revealed the overall policies and protocols employed at Recontrust, which direct employees to sign documents without any personal knowledge about the facts included in the Notice of Default, Notice of Substitution of Trustee, and Assignment of Deed of Trust. This is not surprising given Recontrust is a subsidiary of Bank of America and maintains its California office in Bank of America's Simi Valley building. Ms. Friedman testified that there are two "audit" teams at Recontrsut that prepare these foreclosure documents and that both teams simply print out and sign these documents without ever speaking to the servicer, verifying the information, or having any personal knowledge at all as to the facts to which they attesting. In fact, Ms. Friedman testified that that the first audit team creates the title documents by inserting the entities' names who purportedly are being assigned an interest. The second audit team is then handed an Assignment, Substitution, and NOD and told to execute the documents. As a member of the second audit team, Ms. Friedman testified that she is never given any other documents to review before executing the Assignment, Substitution, and NOD. Ms. Friedman further testified that she has no independent knowledge of the beneficiary of the Deed of Trust or whether the Note was ever assigned.

1  corresponding Exhibit "B," "plausibly give rise to an entitlement to relief" (quoting

2  *Twombly*, 550 U.S. at 555.)  In fact, it would be almost impossible for Plaintiff to

3  uncover any additional details surrounding the invalid assignment without the benefit of

4  discovery.

5      Plaintiff has never, and does not dispute that a debt obligation exists.  However,

6  Plaintiff does dispute that Defendants have a security interest in the debt obligation such

7  that they can attempt to enforce this debt obligation by collecting payment or enforcing

8  the Deed of Trust.  Plaintiff seeks to have the Court consider ***all the evidence***, ***after both***

9  ***sides have an opportunity to conduct discovery***, and make a ruling based on an

10  application of the law to these facts.

11      As the Court is well aware, in determining whether to grant a motion to dismiss

12  under Federal Rule 12(b)(6), the Third Amended Complaint should be construed in the

13  light most favorable to the Plaintiff and its allegations are to be taken as true.  At this

14  stage of the litigation, Plaintiff only needs to state a valid legal argument, factual

15  allegations that accepted as true are plausible, and that potentially he would be entitled

16  to relief.  Clearly, this Court is in a position to determine, based on an application of the

17  law, whether or not Defendants are the owners of this debt obligation and the Court can

18  grant relief accordingly.

## III.    STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

22      Motions to dismiss for failure to state a claim under Federal Rules of Civil

23  Procedure, Rule 12(b)(6) are viewed with disfavor, and, accordingly, dismissals for

24  failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246,

25  249 (9th Cir. 1997) (citation omitted).  The standard for dismissal under Rule 12(b)(6) is

26  a stringent one. "[A] complaint should not be dismissed for failure to state a claim

27  unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of

28  his claim which would entitle him to relief." *See Hartford Fire Ins. Co. v. California*,

1  509 U.S. 764, 811 (1993) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957);

2  *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added).

3  The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of

4  the statement of the claim for relief in the complaint.  *See Rutman Wine Co. v. E. & J.*

5  *Gallo Winery,* 829 F.2d 729, 738 (9th Cir. 1987).  The complaint must be construed in

6  the light most favorable to the nonmoving party and its allegations taken as true.  *See,*

7  *Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).*  It is *not* a procedure for resolving a

8  contest about the facts or the merits of the case.  In reviewing the sufficiency of the

9  complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the

10 Plaintiff is entitled to offer evidence to support the claims asserted. *See Scheuer v.*

11 *Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  Furthermore, more

12 recently, the U.S. Supreme Court has held that to survive a motion to dismiss, a

13 complaint must contain sufficient factual matter, accepted as true, would "state a claim

14 to relief that is plausible on its face."  *See Bell Atlantic Corp. v. Twombly,* 55 US 544

15 (2007).  This is the standard under which the Court should consider Defendants' Motion

16 to Dismiss on the issue of the viability of Plaintiff's claims.  Plaintiff asked the Court to

17 apply the correct standard and dismiss this Motion and allow the proceeding to continue

18 in the manner that is procedurally correct.

19 **IV.    JUDICIAL NOTICE IS PROCEDURALLY CORRECT AS TO THE**

20 **EXISTENCE OF DOCUMENTS, BUT NOT AS TO THEIR CONTENTS**

21       Even though the Court may "take judicial notice of matters of public record

22 outside the pleadings and consider them for purposes of the motion to dismiss," the

23 Court may *only* take judicial notice of their existence, not as to their contents.  "Taking

24 judicial notice of a document is not the same as accepting the truth of its contents or

25 accepting a particular interpretation of its meaning."  *Joslin v. H.A.S. Ins. Brokerage,*

26 184 Cal. App. 3d 369, 374 (1986).  While it is true that the acts of the county recorder

27 *may be* subject to judicial notice, Defendants' compilation of such acts and the

28 deductions that they proffer in that regard *are not* appropriate subjects for judicial

1   notice.  Without any sort of foundation as to the personal knowledge of the person

2   making the statements contained in the documents, these are just records of acts from

3   which nothing may be properly deduced.

> **"[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced there from**, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow there from." (citations omitted).

9   *Mangini v. R. J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057, 1062 (1994) (emphasis added).

10   While courts can take judicial notice of public records, they do not take notice of the

11   truth of matters stated therein.  *Love v. Wolf*, 226 Cal. App. 2d 378, 403 (1964).  In

12   addition, "when judicial notice is taken of a document … the truthfulness and proper

13   interpretation of the document are disputable."  *StorMedia, Inc. v. Superior Court*, 20

14   Cal.4th 449, 457, fn. 9 (1999).

15   Further, in *Poseidon Development, Inc. v. Woodland Lane Estates, LLC*, 152 Cal.

16   App. 4th 1106 (2007), the court considered the scope of judicial review of a recorded

17   document:

> "[T]he fact [that] a court may take judicial notice of a recorded deed or similar document, does not mean it may take judicial notice of factual matters stated therein.  For example, the First Substitution recites that Shanley 'is the present holder of beneficiary interest under said Deed of Trust.' By taking judicial notice of the First Substitution, the court does not take judicial notice of this fact because it is hearsay and it cannot be considered not reasonably subject to dispute."

22   *Id.* at 1117 (citations omitted).  Therefore, the truthfulness of the contents of the

23   recorded documents still remains subject to dispute.  *See StorMedia*, supra 20 Cal.4th at

24   457, fn. 9.

25   In the instant case, Defendants attempt to turn this Motion to Dismiss into a

26   Motion for Summary Judgment by relying on several exhibits attached to their Request

27   for Judicial Notice ("RFJN"), filed concurrently with their Motion to Dismiss, to support

factual contentions which they seek to inject into the pleadings. For instance, Defendants cite to "Exhibit C" to support their position that Plaintiff Armeni cannot challenge securitization of his mortgage under the Deed of Trust and that Deutsche was assigned the beneficial interest in his Note and Deed of Trust. Plaintiff not only specifically disputes this proposition, but also this is the precise type of hearsay that cannot be considered in the context of Defendants' Motion. *Poseidon Development*, 152 Cal. App. 4th, at 1117.

## V.   **PLAINTIFF IS NOT REQUIRED TO TENDER**

Tender is not required when the action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Lona v. Citibank, N.A.*, 2011 WL 6391584, *14-16 (Cal. App. 6 Dist. Dec. 21, 2011) (identifying four exceptions to the tender rule); *Sacchi*, 2011 WL 2533029, at *9-10 (*citing Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997)); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957); *see also Vogan*, 2011 WL 5826016, at *7-8 ("The Court holds that the tender requirement does not apply to this case because Plaintiffs are challenging the beneficial interest held by U.S. Bank in the deed of trust, not the procedural sufficiency of the foreclosure itself."); *Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) ("…requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan."). In recognizing the existence of exceptions to the tender rule, the *Sacchi* court articulated the inherent unfairness in requiring a homeowner challenging the underlying debt to tender the full amount due:

> Defendants present this "tender" argument as though it were absolute and without exception. Such a rule, if it existed, would in many instances eliminate any possibility of challenging wrongful foreclosures. Most homeowners, even those who are not in default, do not have ready access to the funds necessary to pay off the balance of their mortgages. Thus, if a

home is about to be taken away through error or malfeasance, a homeowner would be unable to hold onto his most precious possession.  This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity.

*Sacchi*, 2011 WL 2533029, at *9.  Here, Plaintiff just such malfeasance.[3]

The court in *Vogan*, recognizing that requiring tender would be inappropriate in just such a case as this, explained, "Plaintiffs are not saying that U.S. Bank failed to follow the letter of California's statutory foreclosure law; they are claiming that U.S. Bank did not have standing to foreclose in the first place.  Thus, relying on *Onofrio*, requiring Plaintiffs to tender the full amount of the indebtedness to an entity, U.S. Bank, that is allegedly not the beneficiary to the deed of trust in order to protect Plaintiffs' interest in the Property would be inequitable." *Vogan*, 2011 WL 5826016, at *7 (*citing Onofrio*, 55 Cal. App. 4th 413).  Plaintiff is therefore not required to tender.

## VI.   PLAINTIFF'S CHALLENGE TO THE ENFORCEMENT OF THE DEED OF TRUST IS PROPER

### A.   The Foreclosure Is Invalid as Defendants Do Not Own the Note

Defendants do not own Plaintiff's debt obligation.  (TAC ¶ 32.)  This is an additional reason why the foreclosure is invalid.  Ownership of the Note is essential to a valid foreclosure.  *Santens v. Los Angeles Fin.*, 91 Cal.App.2d 197, 202 (1949) ("[T]he trust deed is a mere incident of the debt and could only be foreclosed by the owner of the note.").  Defendants cite to *Moeller v. Lien,* 25 Cal. App. 4th 822, 834 (1994), to suggest that Plaintiff cannot add requirements to the nonjudicial foreclosure statutes.  Defendants' reliance on *Moeller* is misplaced.  *Moeller* did not involve the specific allegations challenging foreclosing party's authority to foreclose.  The plaintiff in *Moeller* sought to have the court include Cal. Civ. Code section 3275 as part of the

---

[3] Tender is also not required where a borrower has claims against the beneficiary that would offset the amount due.  *Lona*, 2011 WL 6391584, at *14.  Plaintiff's TAC pleads numerous violations of state and federal law.

statutory foreclosure framework.  Not surprisingly, the court rejected the plaintiff's request to inject additional requirements into statutory foreclosure framework under Cal. Civ. Code section 2924 et seq. *Id.* at 833-34.  Unlike *Moeller*, Plaintiffs are not trying to inject additional requirements or other statutory requirements into the existing statutory foreclosure framework.  Ownership of the promissory note is already a requirement of the nonjudicial foreclosure framework.  *Santens*, 91 Cal.App.2d, at 202; *Cockerell v. Title Ins. & Trust Co.*, 42 Cal. 2d 284, 291 (1954) (citing *Santens*).

**B.    Plaintiff's Challenge to Deutsche's Authority is Proper and *Gomes* is Inapplicable**

Courts have recognized a borrower's right to bring claims challenging a party's ability to foreclose.  *See Vogan*, 2011 WL 5826016 at *7; *Schafer v. CitiMortgage, Inc.*, No. CV 11-03919 ODW, 2011 WL 2437267, *4 (C.D. Cal. June 15, 2011); *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029, at *5 (C.D. Cal. June 24, 2011) ("It is true, as Defendants repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-judicial foreclosures in this state.  It is not the case, however, that the availability of a nonjudicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiffs from following the law." ).  Indeed, one of the very purposes of California's nonjudicial foreclosure statutes is "to protect the debtor/trustor from wrongful loss of the property." *Fontenot*, 198 Cal. App. 4th, at 270 (internal quotations omitted).  Defendants cannot hide behind the nonjudicial statutory framework when they do not meet its most basic requirements.[4]

Lenders have seized on the recent ruling in *Gomes v. Countrywide*, 192 Cal. App. 4th 1149 (2011), by straining the interpretation of its holding to mean that a homeowner

---

[4] A recent audit commissioned by the San Francisco Office of the Assessor-Recorder reviewed 382 foreclosures from 2009 to 2011 and found that 84% contained at least one clear violation of California's foreclosure laws.  The audit is available on the Assessor-Recorder's website at http://sfassessor.org.  (*See* Plaintiff's Request for Judicial Notice, Exhibit A.)

1  cannot challenge a foreclosure or their purported creditor's right to enforce the deed of

2  trust—under any circumstances. *Gomes* held that California Civil Code § 2924(a)(1)

3  does not "provide for a judicial action to determine whether the person initiating the

4  foreclosure process is indeed authorized." *Id.* at *1155.  But the issue in *Gomes* was not

5  whether the wrong entity had initiated foreclosure; rather, the issue was whether the

6  company selling the property in the nonjudicial foreclosure sale (MERS) was authorized

7  to do so by the owner of the promissory note. *See Id.* at 1155 (rejecting the argument

8  that a plaintiff may test whether the **agent** initiating the foreclosure had the **principal's**

9  authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a

10  nominee's authorization to proceed with foreclosure on behalf of the noteholder would

11  fundamentally undermine the nonjudicial nature of the process and introduce the

12  possibility of lawsuits filed solely for the purpose of delaying valid foreclosures").  That

13  is, *Gomes* involved a challenge to whether an ***agent*** had the authorization of its

14  principal, who was the undisputed beneficiary under the deed of trust, to initiate

15  foreclosure.  It was not, as here, a challenge to the ***principal***'s claimed status as

16  beneficiary under the deed of trust.

17        Notably, the *Gomes* court distinguished a case cited by the plaintiff precisely

18  because, in that case, "the plaintiff alleged wrongful foreclosure on the ground that

19  assignments of the deed of trust had been improperly backdated, and thus the wrong

20  party had initiated the foreclosure process. No such infirmity is alleged here." *Id.*

21  Thus, *Gomes* explicitly avoided the scenario pled here, in which "the plaintiff's

22  complaint identified a specific factual basis for alleging that the foreclosure was not

23  initiated by the correct party." *Id.* at 1156.  *Gomes* is therefore inapposite to the instant

24  case.

25  **VII.  PLAINTIFF SUFFICIENTLY ALLEGES THE ASSIGNMENT IS**

26         **INVALID**

27        The Assignment was executed and notarized after the Closing Date of the

28

1 │ Harborview Trust. (TAC ¶ 23.)  The Assignment's failure to comply with the PSA is a

2 │ sufficient basis for pleading its fabrication.  *See Vogan v. Wells Fargo et al.*, No. 11-cv-

3 │ 2098-JAM-KJN, 2011 WL 5826016, at *7 (N.D. Cal. Nov. 11, 2011) ("Plaintiffs

4 │ alleged that the recorded assignment was executed well after the closing date of the

5 │ [trust] to which it was allegedly sold, giving rise to a plausible inference that at least

6 │ some part of the recorded assignment was fabricated.").  *See also Johnson v. HSBC*

7 │ *Bank USA, N.A., et al.*, Case No. 3:11-cv-2091-JM-WVG, *5 (S.D. Cal. March 19,

8 │ 2012) ("The Complaint states that MERS had no knowledge of the assignment, that

9 │ Treva Moreland was never appointed "assistant secretary" by MERS board of directors,

10 │ and thus there was no authority to make the assignment.")  In *Johnson*, the Court also

11 │ also found that, "Plaintiff is not categorically excluded from making claims based on

12 │ allegations surrounding the loan's securitization. *Id.*  S*ee also Wise v. Wells Fargo*

13 │ *Bank, N.A., et al.*, Case No. CV 11-8586 CBM (PJWx) *4-5 (C.D. Cal. March 23, 2012)

14 │ (where Plaintiff's challenge to U.S. Bank's authority was proper because of specific

15 │ allegations related to a "fabricated" assignment of Deed of Trust and Defendants not

16 │ being the proper parties to foreclosure.)

17 │      Furthermore, longstanding law in the state of California automatically renders

18 │ null and void, any assignment involving an interest in real property by an agent that fails

19 │ to disclose its principal. *Fisher v. Salmon*, 1 Cal. 413 (1851).  In the matter of *In Re:*

20 │ *Walker*, the court held that MERS, acting "only as a nominee" for the loan originator,

21 │ under the deed of trust, had no interest in a note to assign when there was no evidence

22 │ that the promissory note had been transferred to MERS. *In Re: Walker*, No. 10-21656-

23 │ E-11, 2010 Bankr. LEXIS 3781 (E.D. Cal. May 20, 2010).  The court stated ",[S]everal

24 │ courts have acknowledged that MERS is not the owner of the underlying note and

25 │ therefore could not transfer the note, the beneficial interest in the deed of trust, or

26 │ foreclose upon the property secured by the deed." *Id.* (citing *In re Foreclosure Cases*,

27 │ 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); *In re Vargas*, 396 B.R. 511, 520 (Bankr.

28 │

1  C.D. Cal. 2008); *Landmark Nat'l Bank v. Kesler*, 289 Kan. 528, 216 P.3d 158 (Kan.

2  2009); *LaSalle Bank v. Lamy*, 12 Misc. 3d 1191A, 824 NY.S.2d 769 (N.Y. Sup. Ct.

3  2006)).  The court in *In re Walker* held, "Since no evidence of MERS' ownership of the

4  underlying note has been offered, and other courts have concluded that MERS does not

5  own the underlying notes, this court is convinced that MERS had no interest it could

6  transfer to Citibank." *Id.*  Thus, the court ruled that without any evidence of MERS'

7  ownership of the underlying note, MERS' attempt to transfer the beneficial interest of a

8  trust deed without ownership of the underlying note is void under California law.

9         MERS' lack of ownership interest in a promissory note is a matter of decided case

10  law based on a record stipulation of MERS' own lawyers.  Specifically, in *MERS v.*

11  *Nebraska*, 270 Neb. 529 (2005), MERS filed a petition requesting a declaratory order

12  that MERS is not a "mortgage banker" under the Nebraska Mortgage Bankers and

13  Licensing Act, and therefore not subject to the license and registration requirements of

14  the Act.  In describing MERS' function in the mortgage industry, MERS' counsel

15  expressly stated:

16         Mortgage lenders hire MERS to act as their nominee for mortgages, which

17         allows the lenders to trade the mortgage note and servicing rights on the

18         market without recording subsequent trades with the various register of

19         deeds throughout Nebraska.

20         To execute a MERS Mortgage, the borrower conveys the mortgage to

21         MERS, who is acting as a contractual nominee. MERS becomes the

22         recorded grantee, however, the lender retains the note and servicing right.

23         The lender can then sell that note and servicing rights on the market and

24         MERS records each transaction electronically on its files. When the

25         mortgage loan is repaid, MERS, as agent grantor, conveys the property to

26         the borrower. MERS represents that this system saves the lender and the

27         consumer the transaction costs that would be associated with manually

28

1  recording every transaction.

2  *Id.* at 534. "Subsequently, counsel for MERS explained that MERS does not take

3  applications, underwrite loans, make decisions on whether to extend credit, collect

4  mortgage payments, hold escrows for taxes and insurance, or provide any loan servicing

5  functions whatsoever. MERS merely tracks the ownership of the lien and is paid for its

6  services through membership fees charged to its members." *Id.*

7      Additionally, MERS, by its own admission, in the elements of its own contract

8  between MERS and its members entitled "Terms and Conditions," (which Plaintiffs can

9  amend to include if deemed necessary) expressly affirms "MERS shall have no rights

10  whatsoever to any payments made on account of such mortgage loans, to any servicing

11  rights related to such mortgage loans, or to any mortgaged properties securing such

12  mortgage loans." The "Terms and Conditions" further state that:

13      MERS and the Member agree that: (i) the MERS system is not a vehicle for

14      creating or transferring beneficial interests in mortgage loan, (ii) transfers

15      of servicing interests reflected on the MERS System are subject to the

16      consent of the beneficial owner of the mortgage loans, and (iii) membership

17      in MERS or use of the MERS system shall not modify or supersede any

18      agreement between or among the members having interests in mortgage

19      loans registered on the MERS System.

20  In addition, MERS covenants that "MERS shall at all times comply with the instructions

21  of the holder of mortgage loan promissory notes. In the absence of contrary instructions

22  from the note holder, MERS shall comply with instructions from the Servicer shown on

23  the MERS System in accordance with the Rules and Procedures of MERS."

24      The Court in *Fontenot v. Wells Fargo Bank* likewise recognized that MERS

25  cannot transfer an interest in property:

26      **While it is true MERS had no power in its own right to assign the**

27      **note,** since it had no interest in the note to assign, MERS did not

28

purport to act for its own interests in assigning the note. Rather, the assignment of deed of trust states that MERS was acting as nominee for the lender, which did possess an assignable interest. A "nominee" is a person or entity designated to act for another in a limited role—in effect, an agent. (Born v. Koop (1962) 200 Cal.App.2d 519, 528 [19 Cal.Rptr. 379]; Cisco v. Van Lew (1943) 60 Cal.App.2d 575, 583-584 [141 P.2d 433].)

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011) (emphasis added). Here, MERS purports to assign the Note to Deutsche. (TAC ¶ 23.) MERS does not identify its principal. As it cannot act on its own, the Assignment is therefore invalid.[5]

Additionally, Plaintiff has specifically alleged that "T. Sevillano" executed the purported assignment while holding herself out to be an "Assistant Secretary" for MERS with no personal knowledge or corporate authority to do so. (TAC ¶ 23.) Also, Plaintiff attached a true and correct copy of "T. Sevillano's" LinkedIn page as Exhibit "B" to his FAC. LinkedIn is a social networking website geared towards companies and industry professionals looking to make new business contacts or keep in touch with previous co-workers, affiliates, and clients. Within LinkedIn, Members can create customizable profiles that detail employment history, business accomplishments, and other professional accolades.[6] "T. Sevillano's" LinkedIn profile reveals her full name as "Tina Sevillano" and demonstrates she works in "Trustee Sales" at "Recon Trust Co." and not as "Assistant Secretary" for MERS. Moreover, her profile indicates she currently holds the "Trustee Sales" position with "Recon Trust Co." These facts make it plausible that "T. Sevillano" is indeed a "robo-signer" acting without any corporate

---

[5] MERS also purports to substitute the trustee without identifying its principal. (*See* Defendants' RFJN Ex. C)

[6] http://www.hudsonhorizons.com/Our-Company/Internet-Glossary/LinkedIn.htm

authority to sign the Assignment on behalf of MERS.  As a result, it is plausible that the Assignment is invalid and failed to transfer the beneficial interest in Plaintiffs' Note and Deed of Trust to Defendant Bank of America.  Certainly, these allegations, accepted as true, coupled with the corresponding Exhibit "B," "plausibly give rise to an entitlement to relief" (quoting *Twombly*, 550 U.S. at 555.)  In fact, it would be almost impossible for Plaintiff to uncover any additional details surrounding the invalid assignment without the benefit of discovery.  As a result, Defendants' Motion to Dismiss on this ground should be denied.

## VIII. <u>PLAINTIFF HAS STANDING TO ASSERT DEFENDANTS ARE NOT HIS CREDITORS</u>

Defendants' contentions that Plaintiff lacks standing to challenge the Assignment and sue under the PSA are a misnomer.  Specifically, Plaintiff does not challenge the validity of securitization or sue for breach of contract under the PSA.  Rather, Plaintiff brings this suit to protect his own interest in the Property.  As Defendants lack standing under the Deed of Trust to demand payments or foreclose on the Property, Plaintiff sues to establish the parties' respective rights and obligations under such Deed of Trust and to enjoin Defendants from taking action against his home.  Defendants' noncompliance with the PSA's terms and requirements merely demonstrates one specific factual basis for asserting invalidity of the purported transfer of Plaintiffs' Loan to the Harborview Trust.

Contrary to Defendant's assertions regarding standing, "standing" to sue is a jurisdictional limitation.  The doctrine of standing is comprised both of constitutional or "Article III" requirements and of "prudential considerations."  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607 (1979).

### A. Plaintiff Meets the Article III Requirements

In order to establish "a case or controversy" within the meaning of Article III, Plaintiff must show the following: 1) injury in fact; 2) causation; and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

The "injury in fact" requirement is met upon a showing that plaintiff is threatened with impairment of their own interests. *See Gladstone Realtors*, 441 U.S. at 100. Here, Defendants claim a right to collect payments from Plaintiff and a stake in the Property, which is his own home. Thus, there can be no doubt that Plaintiff has alleged sufficient facts to meet the requisite "injury in fact" element. *See Aetna Life Ins. Co. of Harford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 462-464 (1937) (cases involving a substantial controversy between parties having adverse interests of sufficient immediacy and reality are justiciable as a case and controversy under Article III).

In addition to an "injury in fact," there must be a causal connection between the injury and the conduct complained of. *Lujan*, 504 U.S., at 559-560. Here, Defendants seek to assert their purported rights under the Deed of Trust, including the power to collect payments with the threat of invoking the non-judicial foreclosure statute and taking Plaintiff's home. Plaintiff's claimed injury - imminent foreclosure of the Property – is directly caused by Defendants' conduct. Thus, Plaintiff has sufficiently alleged the required causal connection between the injury and Defendants' conduct.

Finally, there must be a substantial likelihood that the relief sought, if granted, will redress the injury. *Lujan*, 504 U.S., at 559-560. Here, Plaintiff seeks an adjudication of the parties' respective rights to the Property and under Plaintiff's Loan. To the extent that Defendants are deemed to have no legal rights in connection with Plaintiff's Loan, Plaintiff also seeks to enjoin Defendants from demanding payment, reporting derogatory information to the credit bureaus and evicting Plaintiff from his home. Thus, the declaratory and injunctive relief sought here will redress Plaintiff's injury and prevent the imminent loss of his home.

**B.**   **Plaintiff Meets the Prudential Considerations**

In addition to the immutable requirements of Article III, federal courts have adopted a set of prudential principles that preclude the exercise of jurisdiction over some types of cases in which Article III standing exists:  1) Plaintiff's claim must fall within the "zone of interests" sought to be protected or regulated by the statute or constitutional guarantee in question; 2) the claim must be for injury to Plaintiff's own legal rights and interests, rather than the legal rights or interest of third parties; and 3) the injury must be individualized or confined to a discrete group.  *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-475, 102 S. Ct. 752, 759-760 (1984).  The gist of the question of standing is whether Plaintiff has alleged such a "personal stake in the outcome" as to assure that "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illuminations of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82, S.Ct. 691, 703 (1962).

Here, Plaintiff does not seek to challenge or assert the rights of the trustee or the investors to the securitized trust.  The only relevance that the Harborview Trust and the PSA have to Plaintiff's claim is that there must be a determination of whether or not the Harborview Trust, pursuant to the PSA, has standing to assert to be Plaintiffs' creditor. Again, Plaintiff seeks to protect his own rights to his home.  Thus, Title 28 U.S.C. Section 2201, the Declaratory Judgment Act, provides protection for the precise zone of interest in which Plaintiffs' claim falls.  In addition, the injury claim is on behalf of discrete individuals here – Plaintiff – and no other.[7]

For these reasons, Plaintiff has standing to sue Defendants.  Plaintiff does not claim any benefits to or seek any adjudication of the investors' claims regarding the

---

[7] *See Vogan v. Wells Fargo et al.*, No. 11-cv-2098-JAM-KJN, 2011 WL 5826016, at *7 (N.D. Cal. Nov. 11, 2011); *Johnson v. HSBC Bank USA, N.A., et al.*, Case No. 3:11-cv-2091-JM-WVG (S.D. Cal. March 19, 2012); *Wise v. Wells Fargo Bank, N.A., et al.*, Case No. CV 11-8586 CBM (PJWx) (C.D. Cal. March 23, 2012)

1  failed securitization. Rather, Plaintiff's claims are limited to his own interests –

2  protection of his property rights.

## IX. PLAINTIFF HAS SUFFICENTLY ALLEGED EACH CLAIM IN HIS TAC

### A. Plaintiff has Alleged an Actual Controversy Among the Parties Sufficient to Maintain a Cause of Action for Declaratory Relief

The foundation of Plaintiff's TAC is a request that the Court determine the rights and obligations of the parties relative to the Property. Section 2201(a) of Title 28 of the United States Code expressly permits a party to bring a cause of action for Declaratory Relief: "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941). The United States Supreme Court further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot…The controversy must be definite and concrete, <u>touching the legal relations of parties having adverse legal interests</u>…It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464 (1937) (citations omitted). Here, Plaintiff has alleged an actual case and controversy in connection with Defendants' actions that are present, ongoing and

1    undoubtedly will continue in the immediate future. *See Seattle Audubon Soc'y v.*

2    *Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means

3    by which rights and obligations may be adjudicated in cases brought by any interested

4    party involving an actual controversy that has not reached a stage at which either party

5    may seek a coercive remedy and in cases where a party who could sue for coercive relief

6    has not yet done so.")

7         **B.    Deutsche is a "Debt Collector" under the Fair Debt Collection**

8               **Practices Act ("FDCPA")**

9         Defendant Deutsche violated the FDCPA in attempting to collect Plaintiff's debt.

10   Plaintiff has alleged that Defendant's debt collection activities violated FDCPA because

11   Defendants illegally attempted to collect on Plaintiff's debt obligation when it had no

12   authority to do so.

13        Defendants argue that it is not a "debt collector" as defined under the FDCPA.

14   The FDCPA defines a debt collector as "any person who uses any instrumentality of

15   interstate commerce or the mails in any business the principal purpose of which is the

16   collection of any debts, or who regularly collects or attempts to collect, directly or

17   indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §

18   1692a(6). Neither Deutsche nor BAC Home Loans have any valid interest in Plaintiff's

19   Loan, yet both seek to collect Plaintiff's mortgage payments.[8] As neither are Plaintiff's

20   actual creditor, both are liable as debt collectors. *Castro v. Bank of America, N.A.*, Case

21   No. CV-11-6142-GHK (AJWx), *3 (C.D. Cal. Dec. 9, 2011) (rejecting defendants'

22   arguments that they were creditors and not debt collectors where plaintiffs alleged that

23   Defendants did were not true creditors) ("Without any interest in the mortgage,

24   Defendants cannot be characterized as creditors or mortgagors of Plaintiff's loan.").

25

26   _____

27   [8] Plaintiff concedes that ordinarily BAC Home would not be a debt collector in its role as
     servicer. However, Plaintiff alleges BAC Home Loans acquired servicing rights after default. (TAC ¶
28   54.) As such, BAC Home Loans would be a debt collector under the FDCPA.

1    Also, because BAC Home Loans and Deutsche acquired servicing rights to

2 Plaintiff's Loan while it was in default, they are debt collectors under the FDCPA. *See*

3 15 U.S.C. 1692A(6)(F)(iii). (TAC ¶ 54.)  A Notice of Default was filed on October 28,

4 2010. (TAC ¶ 54.)  The Assignment, also dated October 28, 2010, purports that MERS

5 "hereby grants, assigns, and transfers" the Note and Deed of Trust to Deutsche.  Because

6 the Assignment was not executed *before* the Notice of Default, Deutsche and its agent,

7 BAC Home Loans, are therefore debt collectors under the FDCPA.

8    Finally, Defendants argue that non-judicial foreclosure is not a debt collection

9 activity within the FDCPA.  Plaintiff does not allege that the foreclosure of his Property

10 constitutes the FDCP violation.  Instead, Plaintiff specifically allege that Deutsche,

11 through its agent BAC Home Loans, attempted to collect a debt by demanding

12 payments, attempting to collect payments and threatening to take action if payments

13 were not made.  (TAC ¶¶ 51-65.)

14    **C.    Plaintiff has Sufficiently Alleged a Claim Under California Business**

15          **and Professions Code Section 17200**

16    The Unfair Competition Law (UCL) is codified in California Business and

17 Professions Code section 17200.  The UCL prohibits any unlawful,[9] unfair, or

18 fraudulent[10] business practice.  The UCL is written in the disjunctive, which means a

19 business act or practice can be alleged to be all or any of the three prongs.  *Berryman v.*

20 *Merit Property Management, Inc.*, 152 Cal.App. 4th 1544, 1554 (2007).

21    Here, Plaintiff alleges Defendant Deutsche and/or BAC Home Loans have/has

22 engaged in practices that are: 1) unfair, 2) likely to deceive, and 3) unlawful.  (TAC ¶¶

23

24 ———————————

25    [9] The violation of any federal, state or local law can serve as the predicate for violation of the
unlawful prong of the UCL.  *Munson v. Del Taco, Inc.* 46 Cal. App. 4th 661, 676 (2009).

26    [10] The fraudulent prong of the UCL is premised on whether the public is likely to be deceived.
*Progressive West Ins. Co. v. Yolo County Superior Court* 125 Cal. App. 4th 263, 284 (2005).  It is
27 unlike common law fraud or deception.  *Id.*  The UCL's focus is on the defendant's conduct, rather
than Plaintiff's damages, in service of the statute's larger purpose of protecting the general public
against unscrupulous business practices.  *In re Tobacco II,* 46 Cal.4th 298, 311 (2009).

28

67-74) Defendants have collected Plaintiff's payments with no right to do so and they attempted to cover of the defective transfer of his debt obligation.

Furthermore, Plaintiff has sufficiently stated facts constituting unfair business practices. Plaintiff has alleged that Defendants U.S. Bank and/or GMAC engaged in an unlawful business practices by violating 15 U.S.C. § 1692e and Cal. Penal Code section 532(f)(a)(4). (TAC ¶¶ 1, 70, 72) The California Supreme Court has explained that "[a] business practice is unlawful 'if it is forbidden by any law…'" *See Olszewski v. Scripps Health*, 30 C4th 798, 135 CR2d 1 (2003). California case law has interpreted the "unlawful" prong of section 17200 to hold illegal a business practice that violates any other law, treating it as "unlawful" and making it independently actionable under section 17200. *Cel-Tech Communications & Cel-Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 183 CR2d 548 (1999). Defendants' aforementioned conduct is illegal and thus satisfies the "unlawful" prong of Cal. Bus. and Prof. Code section 17200.

Also, it is against public policy and substantially injurious to consumers to engage in an unfair debt collection practices as Deutsche did here. (TAC ¶¶ 85-88.) "[T]he Supreme Court has not yet enunciated a legal test for unfairness in consumer actions under the unfair competition law. The courts of appeal have variously suggested that a practice is unfair if it offends an established public policy or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' and that unfairness is determined by weighing the utility of the practice against the gravity of the harm to the consumer." *Kunert v. Mission Financial Services Corp.*, 1 Cal.Rptr.3d 589, 607 (2003). The harm to Plaintiff and consumers in general greatly outweighs Defendants' unfair actions.

Deutsche also engaged in "fraudulent" business practices. To state a claim for a fraudulent business practice under section 17200, Plaintiff needs only demonstrate that "members of the public are likely to be deceived." *Bank of the West v. Sup. Ct.*, 2

1  Cal.4th 1254, 1267 (1992) *citing* to *Chern v. Bank of America*, 15 Cal.3d 866, 876

2  (1976).  Deutsche and/or BAC Home Loans engaged in a fraudulent business by

3  collecting on a debt they have no right to is extremely likely to deceive both Plaintiff

4  and the public.

5  **D.      Plaintiff has Sufficiently Alleged a Claim for Breach of Contract**

6  **        Against Defendants**

7       Plaintiff alleges, in the alternative, should the Court find that Defendants have a

8  beneficial interest in Plaintiff's Note and Deed of Trust, that Defendants breached the

9  Deed of Trust by failing to credit payments made by Plaintiff in the order of priority set

10  forth in section 2 of the Deed of Trust.  (TAC ¶¶ 97-101, Ex. F.)  Defendant argues

11  Plaintiff has not sufficiently alleged a claim for Breach of Contract because his TAC

12  does not set out in great detail precisely which mortgage payments were incorrectly

13  applied and why they were applied incorrectly.  This is not so.  A conclusory breach of

14  contract claim would be that "Defendants breached the contract."  Here, Plaintiff has

15  identified the specific section of the contract that was breached: Defendants failed to

16  properly apply payments in the order or priority set forth in Section 2 of the Deed of

17  Trust.  This is all notice pleading requires.  Short of turning the TAC into an accounting,

18  it is not clear what more Defendants want.  Defendants attempt to challenge the factual

19  contentions by arguing that Plaintiff knew the amount of his mortgage payments before

20  engaging in loan modification efforts, but the very nature of the cause of action implies

21  that Plaintiff was making payments at the time of Defendants' breach.  Thus,

22  Defendants' Motion to dismiss on this ground should be denied.

23  **E.      Plaintiff has Sufficiently Alleged a Claim for Breach of the Implied**

24  **        Covenant of Good Faith and Fair Dealing**

25       Defendant argues Plaintiff's Breach of the Implied Covenant of Good Faith and

26  Fair Dealing fails because there is no special relationship between Plaintiff and

27  Defendant.  What Defendant fails to recognize is that a claim for Breach of the Implied

28

1  Covenant of Good Faith and Fair Dealing can proceed on either a contract theory or a

2  tort theory. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 221 (1991).

3  Plaintiff's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing in

4  the instant case sounds only in contract. Thus, contrary to Defendant's argument, the

5  factual elements necessary to establish a breach of the covenant of good faith and fair

6  dealing in this case are: (1) the parties entered into a contract; (2) the plaintiff fulfilled

7  his obligations under the contract; (3) any conditions precedent to the defendants

8  performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to

9  receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's

10  conduct. *See* Judicial Council of California's Civil Jury Instruction 325.

11       There is an implied covenant of good faith and fair dealing in every contract that

12  neither party will do anything which will injure the right of the other to receive the

13  benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654,

14  658 (1958) (internal citation omitted). Thus, if in fact the Court finds an enforceable

15  contract between Plaintiff and Defendants, it must similarly recognize the existence of

16  the covenant of good faith and fair dealing. Plaintiff entered into a contract in the form

17  of the Deed of Trust with the originating lender, America's Wholesale Lender, who

18  purportedly assigned their interest to Deutsche. One of the benefits of the contract was

19  Plaintiff's right to gain equity in the Property through mortgage payments that were to

20  be applied by Defendants according to section 2 of the Deed of Trust. Instead,

21  Defendants frustrated that purpose by applying improper fees and taxes to Plaintiff's

22  Loan, causing Plaintiff to overpay interest. (TAC ¶¶ 114-115.) Taking the allegations

23  as true for the purposes of this Motion, Plaintiff has alleged sufficient facts to support a

24  claim for breach of the implied covenant of good faith and fair dealing.

25  **X.   CONCLUSION**

26       Plaintiff's TAC is well-plead and allows the Court to infer more than the mere

27  possibility of misconduct; in fact, when the Court accepts the factual allegations as true

28

1  the Court can make a "reasonable inference" that Defendants are liable for the

2  misconduct.  Although Defendants do allege "factual" disputes in their Motion, this is

3  not sufficient to support this motion to dismiss.  Therefore, Plaintiff respectfully

4  requests that the Court DENY Defendants' Motion in its entirety.  To the extent the

5  Court dismisses any claim or allegation, Plaintiff requests the opportunity to amend the

6  TAC to cure any deficiency, add additional causes of action or rename any causes of

7  action.

8                                    Respectfully Submitted,

9

10  Dated:        March 26, 2012              **PROSPER LAW GROUP, LLP**

11

12                              By:    /s/ Deborah P. Gutierrez

13                                     Gordon F. Dickson
                                       Deborah P. Gutierrez
14                                     Attorneys for Plaintiff,
                                       Atillio Armeni
15

16

17

18

19

20

21

22

23

24

25

26

27

28